(118 N. W. 230.)

***

### Nels H. Elvick v. Harry Groves.

Opinion filed October 29, 1908.

**Elections — Polling Place — Unauthorized Removal.**

1. Where a voting place at a primary election is duly established by the county commissioners at a certain place, an election held at another place over three miles distant, pursuant to a resolution of a majority of the voters of the precinct assembled at a political meeting, is unauthorized, and the returns of the election at such place should not be canvassed.

**Same.**

2. Evidence that no injury followed such change of the voting place is not admissible.

**Same.**

3. It is only in case of emergency or extraordinary circumstances that such a change of a voting place should be upheld.

—36—

Appeal from District Court, Nelson County; *Templeton, J.*

Contest by Nels H. Elvick of the nomination of Harry Groves at a primary election for the office of county treasurer. Judgment for contestee, and contestant appeals.

Affirmed.

*Frich & Kelly,* for appellant.

Departure from strict letter of election law not fatal unless injurious to party complaining. Laws 1907, section 1 and 2; Perry v. Hackney, 11 N. D. 148, 90 N. W. 483; Miller v. Schallern, 8 N. D. 395, 79 N. W. 865.

To defeat an election by change of polling places, contestant must allege and prove loss of votes. Farrington v. Turner, 18 N. W. 544; Ex Parte Segars, 25 S. W. 26; Ex parte Williams, 31 S. W. 653; Stemper v. Higgins, 37 N. W. 95; Roper v. Scurlock, 69 S. W. 456; Simons v. Dunning, 9 N. E. 220; Bordwell v. State, 91 S. W. 555; Perry v. Hackney, supra, Miller v. Schallern, supra.

Delay in opening polls not fatal to election. {Perry v. Hackney, supra; Miller v. Schallern, supra; Soper v. Sibley Co., 48 N. W. 1112; People v. Keeling, 4 Colo. 129; Clark v. Leathers, 5 S. W. 576; State v. Smith, 30 Pac. 1064; Graham v. Graham, 68 S. W. 1093; Patton v. Watkins, 31 So. 93; Bowers v. Smith, 20 S. W. 101; Hope v. Flentge, 47 L. R. A. 822; Packwood v. Brownell, 53 Pac. 1079; Pickett v. Russell, 28 So. 764.

Election laws liberally construed. Bingham v. Broadwell, 103 N. W. 323; Griffith v. Bonawitz, 103 N. W. 327.

*Scott Rex* and *Fred A. Kelley,* for respondent.

An election held at an improper place is void without proof of fraud or prejudice. 10 Am. & Eng. Enc. Law, 684.

Delay in opening polls vitiates election regardless of fraud or injury. 10 Am. & Eng. Enc. Law, 684, 692; People v. Hill, 57 Pac. 669; Tebbe v. Smith, 29 L. R. A. 673, 41 Pac. 454; Hayes v. Kirkwood, 69 Pac. 30; Kenworthy v. Mast., 74 Pac. 841; McCrary on Elections, section 126; Paine on Elections, section 498; Melvins case, 68 Penn. State 333; Hayfron v. Mahoney, 24 Pac. 93; Russell v. McDonald, 23 Pac. 183.

MORGAN, C. J. This is a statutory contest of a nomination for the office of county treasurer of Nelson county. Nels H. Elvick,

the appellant, and Harry Groves, the contestee and defendant, were candidates for a nomination to said office at the primary election held in said county on the 24th day of June, 1908. The contestant received 729 votes and the defendant received 730 votes for said office, according to the election returns, and a certificate of nomination was issued to the defendant by the county auditor. The plaintiff served a notice of contest, and alleged various irregularities as grounds for contesting the right to the nomination certificate. It is unnecessary however, to notice or determine any of such alleged grounds of contest as set forth in plaintiff's notice of contest. The contestant concedes that, if no valid election was held in Adler township, he is not entitled to a certificate of nomination. The facts in regard to the validity of the vote at said precinct are alleged in the defendant's answer as follows: "Upon his information and belief that schoolhouse No. 4 was duly designated as the voting place in Adler township and precinct in said county for said election; that said election was not held in said schoolhouse No. 4, but was held in the manner hereinafter set forth in schoolhouse No. 3, which was distant about three miles from schoolhouse No. 4, and that no election was held in said schoolhouse No. 4; that a pretended election was held during a portion of the day of election in schoolhouse No. 3 in said township and precinct, and certain pretended returns of said election were forwarded to the county auditor by the precinct election board, and were canvassed by the county canvassing board; that said returns show that plaintiff and contestant received 27 votes for said nomination in said precinct, and that defendant received nine votes for said nomination in said precinct, and that said returns were so canvassed by the county canvassing board; that at said pretended election at said schoolhouse No. 3 the polls were not open until about 12 o'clock noon; that, by reason of the facts herein set forth, the said pretended election held in said township and precinct was null and void; and that the pretended vote thereof should be rejected." The trial court made findings of fact and conclusions of law in favor of the defendant, and dismissed the contest. From the judgment dismissing the contest proceedings, the contestant appealed to this court, and demands a review of all of the evidence.

In the findings of fact the trial court found that the election was held at schoolhouse No. 3 without authority of law, and

that the returns from that election precinct should be rejected, and they were rejected. If the action of the trial court in rejecting all the votes from this precinct was proper, it is decisive of the appeal under the express admissions of the appellant. The appellant claims that schoolhouse No. 4 of Adler township was not proven to have been regularly established as a voting place by the board of county commissioners—the proper body to do so. The records of the county commissioners were produced in court showing the designation by them of the various voting precincts of the county, and the county auditor was asked as to what the designation was as to Adler township, as shown by the commissioners' proceedings, and the county auditor answered by reading from the record of the county commissioners, and such record showed that schoolhouse No. 4 had been established as the voting place for said township. This question was asked the auditor before he read from the record: "And what is the designation shown by the record you have in your hand?" This question was objected to as incompetent, irrelevant, and immaterial, and not the best evidence. The court stated after the objection was made: "Your objection does not go to the point that they do not offer the book itself, instead of the auditor's reading from the book." The attorney responded: "No; I don't care anything about that." We think that it was not error to admit the testimony, for the reason that no objection was made thereto upon the ground that it was not the best evidence. This evidence fully established the fact that precinct No. 4 was duly established by the commissioners. The evidence also shows that the notices published under the direction of the county auditor showed that the election in Adler township was to be held in schoolhouse No. 4.

The appellant strenuously contends that the vote of Adler township, as shown by the returns, should be counted notwithstanding the change of the voting place without authority of law from schoolhouse No. 4 to schoolhouse No. 3. He bases this contention upon the alleged fact that it is affirmatively shown that all the electors within said precinct voted at schoolhouse No. 3 on that day, and that, therefore, no injury followed the change of the voting place. He further contends that the change was made pursuant to a resolution of a majority of the electors of said precinct while assembled at a political gathering about a week prior to the primary election. It appears that the officers of election at

Adler township took no official action in reference to the change of the voting place. They did not convene on election day at schoolhouse No. 4, but tacitly acquiesced in the change agreed upon by the electors at the political meeting, and convened at schoolhouse No. 3. There is no claim, nor room for a claim, that the change was made in bad faith. Schoolhouse No. 3 had previously been the one used for holding elections for several years. In regard to the vote for the change of place, it may be said that the record does not affirmatively show that all of the electors of said township participated in, or were present at, the meeting where the change was decided on, and the record does not show that all of the voters in said precinct voted on said election day. Whether an unauthorized change of a voting place is fatal to an election and renders it void is a question on which there is some divergence of authority. Under one line of authorities, the result of the election is rejected without regard to the fact as to whether any injury followed the change of the place of voting or not. Under the other line of authorities, the change is deemed immaterial, providing it is clearly shown that the change of the place was without injury to any one.

In 10 Am. & Eng. Enc. of Law (2d Ed.) page 684, the rule is laid down as follows: "As a rule, the place for holding an election must be fixed by the proper authorities before a valid election can be held. And, when the place has been so fixed, the election must be held there, and not at some other place. There is less latitude allowed in changing the place of holding an election than in varying the time of holding it, and it is a general rule, to which there are few exceptions, that an election held at an improper place is absolutely void without proof of any fraud or injury." In this case the established voting place was arbitrarily changed to a place between three and four miles distant. No excuse is shown, except that it was deemed by the electors at the meeting that resolved in favor of the change that schoolhouse No. 3 was a more convenient location for the electors generally. We do not think the question as to which is the most convenient place for a voting place should be left to the judgment of the voters independently of, or contrary to, the judgment of the county commissioners. On that question we think the action of the county commissioners should be deemed final, and not subject to change by the authorities, except under extraordinary circumstances.

Circumstances may arise making a change absolutely necessary, but the question of convenience should not be considered an excuse or justification for the setting aside of the official action of the proper authorities on so important a question as the establishment of a place for voting in a precinct. On that question the supreme court of California, in Knowles v. Yates, 31 Cal. 83, said: "We are aware that courts have been very indulgent respecting the omissions, inadvertences, and mistakes of officers of election, lest by exacting of them a technical compliance with the requirements of the law the citizen might be deprived of a sacred right. We are not disposed to be less indulgent in respect to the observance of forms and methods than have been the courts to which counsel have referred; but we deem it of the highest importance to the protection of the elective franchise that the law should be complied with in substance, and that those intrusted with discharge of the duties pertaining to elections should be required so to perform them as to preserve the ballot box pure. * * * The election held at the Buckeye house was at a place not authorized by the board of supervisors. It was distant from the place designated, six miles, and though, for aught that appears, the officers there conducted the election in an orderly manner and fairly, they had no right to hold the election at a place other than that fixed by the supervisors. We do not say officers of election would not have authority to hold the election at any other house than the one designated by the supervisors in case of necessity, provided the same be held in the immediate vicinity of the place designated, but, in case of a deviation from the order of the board of supervisors, a reason and necessity therefor should be shown to exist. To allow any other practice to obtain would expose those under political excitement to temptations which, yielded to, might be subversive of the great objects and ends of free suffrage to be exercised at popular elections." See, also, McCreary on Elections (3d Ed.) section 126; Paine on Elections, section 498; Russel v. McDowell, 83 Cal. 70, 23 Pac. 183; Melvin's Case, 68 Pac. 333; Walker v. Sanford, 78 Ga. 165, 1 S. E. 424; Heyfron v. Mahoney, 9 Mont. 497, 24 Pac. 93, 18 Am. St. Rep. 757.

It is our conclusion that the change of the voting place to school-house No. 3 was unauthorized, and that the district court was justified in wholly disregarding the returns from Adler township pre-

cinct, and that evidence to show that the change of voting place was without injury was not admissible under the circumstances shown by the record. Our conclusion of this question renders it unnecessary to consider whether the alleged fact that the election officers failed to open the polls until 11 or 12 o'clock is true, and, if true, the effect upon the canvass of the returns.

The judgment is affirmed. All concur.